UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: <br> **GALLERIA 2425 OWNER, LLC** <br><br> **Debtor** | § § § § § | Case No. 23-34815 (JPN) |
| **ALI CHOUDHRI** <br> *Plaintiff,* <br><br> vs. <br><br> **NATIONAL BANK OF KUWAIT,** <br> **S.A.K.P., NEW YORK BRANCH,** <br> *Defendants.* | § § § § § § § § § § | ADV. PROC. 24-03120 <br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S THIRD[1] AMENDED COMPLAINT

Plaintiff, ALI CHOUDHRI, INDIVDIUALLY, makes and files this his Third Amended Complaint against NATIONAL BANK OF KUWAIT S. A. K.P., New York Branch (hereinafter "NBK"), and respectfully shows:

### PARTIES

1. Plaintiff is an individual residing in Harris County, Texas.

2. Defendant National Bank of Kuwait, S.A.K.P., New York Branch (hereinafter "NBK"), is a banking corporation organized under the laws of Kuwait, acting through its New York Branch and has made an appearance herein.

### JURISDICTION and VENUE

3. This Court does not have bankruptcy jurisdiction over this cause of action as the removal was improper[2] and the parties agreed by contract that any dispute between them would be resolved

---

[1] This is the third iteration of the Plaintiff's pleading, although it is the first filed originally in this Court. This action was removed from the 129th Judicial District Court of Harris County, Texas and is subject to a Motion to Remand. It is being filed under Rule 15 without a request for leave, since no responsive pleading has been filed by the Defendant.
[2] Please see Motion to Remand, Doc.3, and any supplements.

in the state district courts of Harris County[3] and these types of contractual agreements are honored by the courts.[4] Neither the viability of the tax liens or the amount of them is in dispute. The only issue is the identity of the rightful owner of the proceeds of the tax liens, and the determination of that issue is of no moment to the bankruptcy estate. Venue is proper in Harris County, Texas for a number of reasons, most importantly the contractual agreement of the parties.

## FACTUAL BACKGROUND

4. NBK, Galleria Owner, LLC ("Galleria"), Naissance Galleria, LLC ("Naissance", and Ali Choudhri, individually ("Choudhri") entered into an agreement titled "Confidential Settlement Agreement" (hereinafter "CSA") with a defined Effective Date of August 22, 2022.

5. The CSA was recently presented in proceedings before this Court as an exhibit by NBK, the Trustee, and perhaps other parties. Plaintiff requests that the Court take judicial notice of this contract that is in the Court's file.

6. Portions of the CSA appear in this Court's memorandum opinion regarding confirmation.

7. Under the terms of the CSA Galleria agreed "to pay or cause to be paid to NBK the total sum of $27,000,000."

8. Under the CSA no party other than Galleria agreed "to pay or cause to be paid to NBK the total sum of $27,000,000."

9. Under the terms of the CSA a Down Payment was to be made directly to NBK, described as "EIGHT HUNDRED AND ONE THOUSAND FIVE HUNDRED AND NINE AND 42/100 US DOLLARS ($801,509.42)."[5]

---

[3] The CSA expressly states that the parties "agree that exclusive jurisdiction for any dispute based on or arising from this agreement will be in the Harris County District Court, Houston, Texas."
[4] *E.g., Grand View PV Solar Two, LLC v. Helix Elec., Inc.*, 847 F.3d 255 (5th Cir. 2017); *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004).
[5] The Down Payment included "such amount [the $801,509.42] including any increases thereto or income thereon".

10. NBK received the Down Payment.

11. The time frame for payment of the Settlement Amount by Galleria under the CSA was identified in the CSA as the "Payment Date" and that date was 210 days from the Effective Date.

12. The CSA also provided for a "Purchase Option" that included a "Purchase Option Payment" that could be made by the "Purchase Option Parties." Under the Purchase Option, the Purchase Option Parties had the right, but not the obligation to "purchase the Loan Documents" (as defined in the CSA).

13. The "Purchase Option Payment" includes the Down Payment referenced in paragraph 3.1(d) of the CSA, and referenced in this pleading in paragraph 9. The remainder of the "Purchase Option Payment" is the balance of funds, which added to the Down Payment equals the total purchase price of $27,000,000.

14. The Purchase Option was never exercised by any party prior to the Payment Date.

15. The CSA expired by its terms on the Payment Date.

16. The CSA also provided that "[t]o the extent that a Settlement Default (as defined below) occurs, then NBK shall be entitled to retain the Down Payment as liquidated damages…".

17. The CSA provided that Texas law would apply.

18. Under Texas law the term "liquidated damages" as used in the CSA refers to an acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach.

19. The CSA provided that in the event of a Settlement Default "then NBK shall be entitled to retain the Down Payment as liquidated damages..."

20. The CSA also provides that "Choudhri shall cause the transfer and assignment of the tax liens with respect to the Property for years 2019 and 2020 (the 'Tax Liens') to NBK.

3

21. Choudhri did in fact cause the transfer and assignment of the Tax Liens to NBK.

22. The CSA further provides that "Upon NBK's receipt of either the Settlement Payment or the Purchase Option Payment, NBK shall contemporaneously transfer and assign the Tax Liens to Choudhri."

23. The Tax Liens are nowhere defined in the CSA as part of the consideration of the Settlement Payment or the Purchase Option Payment.

24. The Tax Liens are not part of the Settlement Payment or the Purchase Option Payment.

25. The Tax Liens are nowhere defined in the CSA as part of the "Down Payment".

26. The Tax Liens were not part of the "Down Payment".

27. The Tax liens are nowhere defined in the CSA as "liquidated damages."

28. The Tax Liens are not liquidated damages.

29. The Tax Liens are not defined anywhere in the CSA as damages for breach of the CSA by any party.

30. Texas law provides that claimed liquidated damage provisions that violate the rule of just compensation, either in design or in operation are not enforceable.

31. The value of the Tax Liens at the time they were temporarily transferred to NBK exceeded $3,000,000.

32. The Purchase Option is not susceptible to being "breached" since it offers an option but does not create an obligation.

33. Any exercise of the Purchase Option was required by the CSA to be "in the form and manner provided in Section 12 of the Intercreditor Agreement."

34. Plaintiff did not exercise the Purchase Option "in the form and manner provided in Section 12 of the Intercreditor Agreement" prior to the Payment Date.

35. On or about April 11, 2023 a civil action was commenced by Galleria Owner 2425, LLC in the 281st District Court of Harris County, Texas, being Cause No. 2021-63370 regarding disputes concerning the CSA.

36. In the matter pending in the 281st Judicial District Court, Galleria asserted that NBK breached the CSA.[6]

37. The trial court in the case in the 281st entered an Order finding that it was likely that Galleria would prevail on its claim of breach of contract.

38. The finding by the 281st District Court in paragraph 37 was never appealed or set aside.

39. On June 28, 2023 a letter in email form was forwarded by the lawyers for NBK to counsel for Galleria and Choudhri.

40. The June 28, 2023 letter listed as "Amounts Paid to Date" the Down Payment, an April $80,000 payment per order of the Court, and a May $80,000 payment, also per order of the Court.

41. The June 28, 2023 letter was sent after the Payment Date.

42. The June 28, 2023 letter reflected an "Outstanding Settlement Balance" of $26,038,490.58.

43. At no time prior to April 28, 2024 did NBK or its representatives send a writing to Plaintiff or his representatives that payment of $26,038,490.58 would be unacceptable.

44. At no time ever did NBK assert that the consideration for the purchase of assets included in the CSA would be greater than $27,000,000.

45. By correspondence dated April 28, 2024, from Ali Choudhri to Charles Conrad, counsel for NBK, Mr. Choudhri wrote that he accepted and tendered the Settlement/Purchase Option in the amount of $26,038,490.58.

---

[6] The pleadings in this state court case are now in 2023-22748 before this Court, and Plaintiff requests that the Court take judicial notice, not of the factual accuracy of the pleadings, but of the allegations contained therein.

46. NBK did not respond to Mr. Choudhri's April 28, 2024 communication favorably.

47. In oral testimony on June 5, 2024 NBK's designated representative indicated that NBK considered the tender of the Settlement/Purchase Option untimely.

48. The offer to pay the $26,038,490.58 contained in Mr. Choudhri's April 28, 2024 letter was rejected by NBK.

49. NBK considered the CSA in breach when the Settlement Amount was not received by NBK on or before the Payment Date.

50. Plaintiff had requested return of the Tax Liens or compensation in the amount of the Tax Liens but NBK has declined to either return the Tax Liens or remit their value to Plaintiff.

## CLAIMS FOR RELIEF

51. <u>Conversion</u> – Pleading in the alternative, NBK's retention of the Tax Liens to which Plaintiff had entitlement to possession constitutes the unlawful and unauthorized assumption and exercise of control over the property to the exclusion of and inconsistent with, the plaintiff's rights as an owner. Nothing in the CSA or in the common law of the State of Texas allows NBK to keep the Tax Liens under the circumstances present in this case. To the extent that NBK breached the CSA with respect to the only obligor in the contract, NBK had no right to maintain possession of the Plaintiff's Tax Liens. To the extent that performance by Galleria was prevented or did not occur, NBK had no legal right to maintain possession of the Tax Liens. The remedy for breach of contract is a suit for damages against the party who breached, which in this case could not be Plaintiff, since Galleria was the only party with the obligation to "pay or cause to be paid to NBK the total sum of $27,000,000" and no option was ever exercised by Plaintiff or consented to by NBK. The Tax Liens are not "liquidated damages" because they are not identified as such, and because the CSA does identify liquidated damages in a specific amount in the event of a breach

that does not include the Tax Liens, and because the Tax Liens are the property of Plaintiff, who as a matter of law could not have breached the CSA. NBK agreed to an amount as "liquidated damages" and was paid the amount agreed as "liquidated damages." To the extent that NBK now claims that the Tax Liens are liquidated damages, this is contrary to the terms of the CSA, and in any case the terms regarding the Tax Liens would be unenforceable under Texas law as liquidated damages because they are clearly a penalty against a party who could not have breached the contract.[7]

52. <u>Money Had and Received – Unjust Enrichment.</u> Pleading further in the alternative, Plaintiff would show that the Tax Liens have been wrongfully held by NBK and the funds derived from them should be restored to Plaintiff to prevent the unjust enrichment of NBK. Equity and good conscience require restitution of the value of the Tax Liens to Plaintiff. Under the circumstances presented here, NBK holds money which in equity and good conscience belongs to the Plaintiff. The CSA unequivocally identifies the purchase price in the transaction, and it does not include the Tax Liens. At no time from August 22, 2022 through the date of the letter from NBK's counsel in June 2023 did NBK take the position that the Tax Liens were somehow part of the purchase price. As of this time, NBK has never taken such a position. Similarly, the CSA identifies a specific cash penalty, identified directly as liquidated damages, that NBK is to receive in the event of breach of the CSA. The only breach identified is the failure to remit the Settlement Payment, which is an obligation of Galleria, not the Plaintiff. No breach of any kind has been asserted against the Plaintiff. Liquidated damages are defined under Texas law as "a contractual device that parties use to determine their rights and liabilities in the event of a dispute."[8] NBK

---

[7] *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991) (Whether a contractual provision is an enforceable liquidated damages provision or an unenforceable penalty is a question of law for the court to decide.').
[8] *See Atrium Med. Ctr., LP v. Hous. Red C LLC*, 595 S.W.3d 188, 192 (Tex. 2020)

received those liquidated damages. NBK received the liquidated damages that it contracted to receive. The CSA, absent a finding of breach that caused other damages, is concluded. No justification exists for the continuing exercise of dominion and control over the any funds derived from the Tax Liens by NBK. Assuming the CSA was breached by Galleria and there is no legal excuse for the failure of Galleria to "pay or cause to be paid" funds, NBK has received its full measure of its agreed damages by its retention of the Down Payment as liquidated damages. Alternatively, any further grievance it might have would only be against Galleria, the only party obligated under the CSA to make payment.

53. <u>Breach of Contract by NBK</u> – Pleading further in the alternative, Plaintiff would show that the failure to return the Tax Liens to Plaintiff is a breach of contract. The operative provision requires the Tax Liens to be conveyed to Plaintiff once the contract between Galleria and NBK is concluded by payment. NBK asserts that the CSA was breached by Galleria, and the damages for that alleged breach have been received by NBK. The acceptance of the liquidated damages concludes Galleria's obligations under the CSA and is the agreed upon substitute for performance – i.e. the payment of the Settlement Payment. To the extent that the condition for the return of the Tax Liens is in any way enforceable, it has effectively been met. Whether Galleria or NBK breached the CSA, or neither of them did, the rules of contract law required the return of the Tax Liens to Plaintiff, and gives to Plaintiff the right to monetary damages equal to the value of the Tax Liens.

54. Pleading further in the alternative, Plaintiff pleads for rescission of the contract terms related to the Tax Liens in the event the Court does not find as a matter of law that the funds obtained by NBK should be paid on the face of the CSA and the undisputed conduct of NBK. Rescission of a contract term is a remedy that operates to extinguish a contract term whether it is

valid or not when it must be set aside because of fraud, mistake, or some other reason to avoid unjust enrichment. The contract provisions concerning the Tax Liens should be rescinded because it was never within the contemplation of both parties that the Tax Liens would be held by NBK on anything other than a temporary basis, and the contract nowhere allows the retention of the Tax Liens due to a breach by NBK or Galleria, or the failure of the payments to be made irrespective of legal fault. NBK has no breach of contract case against the Plaintiff, and in these circumstances could not. NBK has no viable legal action against the Plaintiff that would allow it to keep the Tax Liens, and the funds derived from them, under any damage theory at all. The obligor on the CSA was Galleria. This provision should be avoided due to unilateral or mutual mistake or the doctrine of "mistake-plus-knowledge."

55. Pleading further in the alternative, if in this case if NBK was always had the intention that once it had secured Plaintiff's Tax liens it would retain them even if the contract was breached by NBK or Galleria, or for some unknown and justified reason the contract was not performed it was aware that this was not the intent of the Plaintiff and was aware of the mistake, and intentionally made no mention of this windfall to itself, leaving Plaintiff in the mistaken view that the Tax Lien transfer was temporary only. No other construction of these facts makes any sense. The "mistake" was "remediable" since this provision could have indicated what result followed if Galleria failed to perform, or for any reason the contract was not performed. If this result is not clear from the wording of the CSA itself, then a jury must determine the fact question concerning whether the mistake is such that this provision should be rescinded.

56. Pleading further and in the alternative Plaintiff would show that Plaintiff received no consideration for a provision that allegedly allows NBK's permanent taking of the Tax Liens. First of all, the provision adds nothing of any substance to the obligation of Galleria to pay or cause to

9

be paiD the $27,000,000. The Down Payment is the same. The balance is the same. The timing of the Settlement Payment is the same. The agreement on the amount of liquidated damages in the event of a default remains the same. The provisions regarding the Tax Liens, if interpreted as being permanently the property of NBK are without consideration of any kind. They are not part of the Down Payment. They are not part of the Settlement Payment. They are not liquidated damages. These provisions should be rescinded and the Tax Liens, or the funds derived therefrom, returned to Plaintiff.[9]

57. Pleading further and in the alternative, Plaintiff would show that the factual circumstances surrounding the performance of the parties to the CSA are complicated and unresolved. These claims have not been fully and fairly litigated as is applicable here, with the possible exception of the proceedings in state court reference above. In the event that NBK breached the CSA[10], then the retention of the Tax Liens obviously has no support in law, since NBK would be profiting from its own breach, but this result would follow from NBK's construction of the CSA. This result is even worse than NBK punishing Plaintiff for the alleged breach of the other party to the CSA which is the only party to the CSA with an obligation to "pay or cause to be paid" the Settlement Amount. This construction is untenable and e above paragraphs concerning causes of action that support the return of the Tax Liens or the funds derived from them, compel the return of the Tax Liens or the payment of the value of the Tax Liens to the Plaintiff.

58. Pleading further an in the alternative, should the Court find that the language concerning the Tax liens did not compel the return of the Tax Liens to Plaintiff and as a matter of law compel

---

[9] Plaintiff anticipates that the recent auction and sale will be approved by the court and the buyer will have the responsibility for paying the Tax Liens. Any references to the "return" of the Tax Liens is not operative absent unforeseen circumstances, but would otherwise be an alternative legal remedy.

[10] These allegations have been incorporated by reference and are not the basis for a cause of action in this pleading for contract damages for breach per se. Their inclusion in this pleading is addressed to the effect of a party other than Plaintiff causing a breach, and the effect that should have in law regarding the return of the Tax Liens or payment of their value to the Plaintiff.

damages to be awarded to Plaintiff of their value, then Plaintiff would show that the language is ambiguous since there is no language in the CSA that expressly deals with the handling of the Tax Liens in the event of a breach of the agreement by NBK or by Galleria. There is no language concerning the treatment of the Tax Liens in the event of justifiable impossibility or other no-fault events that might prevent performance in a timely fashion. It seems abundantly clear that the parties intended the transfer to be only temporary but should there be any doubt about this then the operative clause must be considered ambiguous. Under Texas law when a contract does not specifically address the treatment of the retention of assets the provision is deemed to be ambiguous, and then the fact question of intent must be resolved by a jury.

59. State Court Matters -- Docket Control Order –If the matter is remanded, Plaintiff requests a docket control order specific to this particular case. Pursuant Texas Rule of Civil Procedure 47(c)(4) Plaintiff seeks damages for over a million dollars. All conditions precedent to Plaintiff's claims for relief have occurred or been performed. RULE 193.7 NOTICE Plaintiff hereby gives actual notice to Defendant that any and all documents produced may be used against Defendant at any pre-trial proceeding and/or at trial of this matter without the necessity of authenticating the documents.

## DAMAGES

60. Plaintiff requests monetary damages in the amount of the value of the Tax Liens, as well as reasonable attorneys' fees, prejudgment and postjudgment interest and costs, to the extent allowed by law.

## JURY DEMAND

61. Plaintiff demands a jury trial.

**PRAYER**

62. Plaintiff prays that upon hearing this matter be remanded back to the state court from which it was removed, the controversy here being between two non-debtor parties over the ownership of the proceeds from payment of the Tax Liens, and that after a jury trial the Plaintiff have judgment against NBK for actual damages in the amount of the value of the Tax Liens, for reasonable attorneys' fees, for costs, for prejudgment and post-judgment interest as set forth in law, and for such other and further relief concerning which the Court deems fair and just.

Respectfully Submitted,

**THE STEIDLEY LAW FIRM**

*By: /s/ Jeffrey W. Steidley*
JEFFREY W. STEIDLEY
State Bar No. 19126300
Federal Bar No. 5609
jeff@texlaw.us
3701 Kirby Drive, Suite 1196
Houston, Texas 77098
(713) 523-9595 (telephone)
(713) 523-0578 (facsimile)

**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served all counsel of record electronically or by other manner authorized by Fed. R. Civ. P. 5(b)(2) on this the 3rd day of July, 2024, as indicated below:

Charles C. Conrad                                  ***VIA ECF***
State Bar No. 24040721
Elizabeth Klingensmith
State Bar No. 24046496
Ryan Steinbrunner
State Bar No. 24093201
PILLSBURY WINTHROP SHAW PITTMAN LLP
609 Main Street Suite 2000
Houston, TX 77002
Telephone: (713) 276-7600
Facsimile: (713) 276-7634
charles.conrad@pillsburylaw.com
liz.klingensmith@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com

**Attorneys for National Bank of Kuwait, S.A.K.P., New York Branch**

                                                        *By: /s/ Jeffrey W. Steidley*
                                                              Jeffrey W. Steidley